Herbert D. Hamm, J.
This is a proceeding under article 78 of the Civil Practice Act. The Commissioner of Education dismissed the appeal by this petitioner to set aside the action of a special school district meeting which authorized the construction of a school bnilding at a cost not to exceed $1,350,000 and authorized the issuance of obligations of the district in that sum.
The vote at the meeting was as follows:
Yes 597 No 550 Blank 45 Void 1
Subdivision 2 of section 416 of the Education Law provides for ascertaining the votes of “ qualified voters attending and voting ”. When the expression “ qualified voters attending and voting ’ ’ is employed blank and void ballots will not be considered in determining whether a proposition was approved or defeated (Matter of Colson v. Allen, 285 App. Div. 797). On appeal the petitioner contended that the proposition did not receive a majority vote. The total of 597 affirmative votes and 550 negative votes is 1147. A majority of 1147 is 574 and the proposition received an affirmative vote of 597.
It appears that 11 persons who were not registered were allowed to cast their ballots. Assuming that 11 votes were illegally cast, deducting the 11 votes from the affirmative vote of 597 leaves an affirmative vote of 586. This vote, when added to the negative vote of 550, makes a total of 1136. A majority of this total would be 569. The votes of the 11 persons alleged to have been improperly permitted to cast their ballots could not have affected the result of the meeting.
It is alleged that one person was permitted to vote a second time and that another person was refused the right to vote after he complained he could not push the “ No ” lever down. Deducting an affirmative vote and adding a negative vote likewise would not change the result.
Affidavits are furnished from three other voters that they had difficulty in pushing the “ No ” lever down. No evidence was adduced that they did not in fact push the lever down and that their votes were not properly recorded. The commissioner was correct in refusing to speculate on the basis of these affidavits, conceding them to be correct, that the machines functioned improperly so as to fail to record votes.
Two affidavits were submitted to the commissioner that the knobs above and below the “ No ” lever were not locked. This *139 seems obviously in error as customarily there is no lmob above the “ No ” lever and the next lower knobs are on row A. But, in any event, no proof is offered that any vote failed of recording or was improperly recorded because of an unlocked knob.
The petitioner complains that 48 persons not personally registered were not permitted to vote. If a Board of Education of a district does not adopt personal registration pursuant to the provisions of subdivision 1 of section 1804 and of section 2014 of the Education Law, any qualified voter of the district may present himself to the meeting and, after his name has been placed on the poll list, may cast his ballot. Under the alternate procedure for registration voters must have been registered previously. Reginald Lush, who is the petitioner herein, had, prior to this proceeding and the appeal on which it is based, appealed to the Commissioner of Education with relation to the election of members of the Board of Education. He questioned the establishment of personal registration. On March 8, 1956, the commissioner upheld the validity of the resolution to establish a hoard of registration for the district but sustained the appeal on the ground that the arrangement of the candidates did not conform with the provisions of section 2032 of the Education Law and on the further ground that provision was not made on the voting machines for write-in votes. On June 20, 1956, he reopened and dismissed the appeal on the ground that he had reached his decision under a misapprehension of fact as to arrangement of candidates and provision for write-in votes. He again upheld the validity of personal registration. In the notice of the special meeting herein sought to be reviewed notice of requirement of personal registration was given to unregistered voters. The notice stated: “ And notice is also given that personal registration of all qualified voters is required. The Board of Registration shall meet on November 3, 1956, at the Manchester School, in the said Village of Manchester, from ten o’clock, A. M., to three o’clock P. M., Eastern Standard Time, and at the Shortsville School, in the Village of Shortsville, in said District, on November 10, 1956, from three o’clock, P. M. to eight o’clock, P. M., Eastern Standard Time, for the purpose of preparing the register of the school district, and any person who did not register at the annual school meeting which was held on July 10,1956, shall be entitled to have his or her name placed upon such register, provided that he or she is known, or proven to the satisfaction of such Board of Registration, to be then or thereafter entitled to vote at such special meeting.” And prior thereto notice had been given that the *140 board would meet for registration on July 10, 1956, and also on July 11, 1956. To have permitted the 48 unregistered persons to vote would not have been legal.
It is complained that recommendations of the State Education Department were not publicized to the voters. The recommendations of the Education Department are purely advisory both as to the board and to the voters. Failure to publicize such recommendations did not invalidate the action taken at the special meeting.
Complaint is made obscurely about options procured by the board prior to the special meeting. It was merely good business practice to secure options on parcels of land prior to the time the board obtained the authority from the voters to acquire a site. Under the provisions of the Education Law (§ 1709, subd. 6); the Board of Education of a central school district cannot acquire a site until the same has been designated by a meeting of the district. Obtaining options did not affect and did not invalidate the action taken at the special meeting.
It is contended that the voters were misled by the display and advertising of brochures showing a high school with an auditorium. The brochures, which are part of the return, speak for themselves. Moreover, the petitioner’s Exhibit D mailed to the voters before the election clearly stated ‘ If carried, you will have an opportunity to vote for an auditorium to this building ”. And, in addition to the refutation of Exhibit D, which also speaks for itself, no proof was offered that any voter had been misled. It could not be found that there was no rational basis for the commissioner’s finding that the brochures did not invalidate the meeting and, on the record submitted to him, for his refusal to speculate.
The absence of public meetings is complained of. There is no requirement that the Board of Education call informational district meetings for discussion, of proposed school building programs.
It is complained that sessions were held to which the public was not invited. Section 1708 of the Education Law providing that meetings of Boards of Education shall be open to the public also provides that “ said boards may hold executive sessions, at which sessions only the members of such boards or the persons invited shall be present”. No proof was submitted that formal action binding upon the district and recorded in the minutes was taken other than openly.
It is contended that the voters were misled as to State aid. The Board of Education furnished a brochure. The computa *141 tion of State aid as to the plan without an auditorium and as to the plan with an auditorium appeared as follows in the brochure :
State Share “ State Share $26,775 $24,640 26,397 24,304 26,019 23,968 25,641 23,632 25,263 24,416 26,285 24,326 25,865 23,948 25,445 23,850 25,025 24,584 24,605 24,164 25,585 23,744 25,123 23,324 24,661 22,904 24,199 23,884 23,737 23,422 . 23,975 24,360 23,492 23,856 23,009 23,352 22,526 22,848 22,043 22,344 22,960 21,840 22,435 21,336 21,910 20,832 21,385 20,328 20,860 19,824 21,735 19,320 21,168 18,816 20,601 18,312 20,034 17,808 19,467 ” 17,304”
Column 1 relates to a building without an auditorium and column 2 relates to a building with an auditorium. The brochure did not contain an addition of the amounts but addition discloses that the total sum of the first column, aid for a building without an auditorium, is $708,225, whereas the total sum for the second column, aid for a building with an auditorium, is $671,590. State aid for buildings is computed in accordance with section 1806 of the Education Law. The Commissioner of Education must compute the “ceiling” as outlined in paragraph a of subdivision 1 of the section. Even assuming that the ceiling did not include the expense of an auditorium and that the addi *142 tional cost of an auditorium would be exclusively a district charge, there is still an error of $36,635. This was for all practical purposes a latent error because the brochures did not include the additions. No proof was submitted that anyone was misled by the board’s mistake or by, as apparently was the case, the Education Department’s mistake. It is to be noted from the face of the brochures also that the board pointed out that the State aid calculated in Albany was not final but was ‘‘ probably different by this time.” No question of fact is involved and it cannot be said that there could be no rational basis for the commissioner’s determination that the error was insufficient to invalidate the action of the meeting and that he was not required to engage in speculation.
The Board of Education paid architects $5,000. The board may spend money for preliminary plans and such payment is merely payment for specific work performed. However, assuming that the payment was an illegal advancement on a contract, it did not affect the action of the special meeting. The petitioner’s remedy is to compel restoration.
The petitioner complains that he was deprived of due process because the commissioner failed to conduct a hearing at which oral evidence was received. This contention is without merit (Matter of Kuhn v. Commissioner of Educ., 1 A D 2d 533, appeal dismissed 2 N Y 2d 749; Matter of O’Brien v. Commissioner of Educ., 3 A D 2d 321).
The petition contains 121 allegations. There may be some ‘ ‘ fringe issues of fact ” involved (cf. Matter of Badman v. Falk, 4 A D 2d 149,153) but none of them is such that its resolution in the petitioner’s favor would leave no rational basis for the commissioner’s decision. And as to all of the issues sought to be raised by the petitioner Mr. Justice Halpern’s statement is apposite (Matter of O’Brien v. Commissioner of Educ., 3 A D 2d 321, 325, supra): “In an appropriate case, in a proceeding-in the nature of mandamus, the court may direct a hearing to be held (Civ. Prac. Act, § 1295; Matter of Arcuri v. Macduff, 286 App. Div. 17 and the cases there cited) . However, in order to be entitled to a hearing, the petitioner must demonstrate that there is a triable issue of fact, the resolution of which in his favor would leave no rational basis for the administrative decision. This the petitioners failed to do in this case.”
The petition is dismissed, without costs. Submit order on three days’ notice.